IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ANDRE MAULDIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15 C 2106 |
| ) | |
| SALEH OBAISI, et al., ) | |
| ) | |
| Defendants. ) | Judge Gary Feinerman |

**PLAINTIFF'S RESPONSE TO THE
IDOC DEFENDANTS' MOTION TO DISMISS**

Now comes Plaintiff, Andre Mauldin, by and through his attorneys, Loevy & Loevy, and respectfully responds to the motion to dismiss filed by Defendants Lemke, Magana, Williams, Hardy, and Baldwin (the IDOC Defendants), stating as follows:

**INTRODUCTION**

Plaintiff's right knee is severely damaged: his ACL is completely torn, and he has multiple tears or sprains in his other ligaments and menisci. For more than 5 years, Plaintiff has been denied medical treatment and access to medical treatment for his knee. During those 5 years, Plaintiff submitted numerous written requests for medical attention and lodged oral requests for medical attention. Nearly all of those complaints were ignored.

Plaintiff has brought claims under 42 U.S.C. § 1983 against Defendants Williams, Magana, Lemke, and Hardy—all of whom were Wardens at Stateville Correctional Center (Stateville) between 2010 and the present—alleging that they were aware of and condoned policies and widespread practices pursuant to which prisoners like Plaintiff with serious medical needs were denied adequate medical care and access to medical care, and that they failed to intervene to prevent the denial of medical care to Plaintiff. He has also alleged that Defendants

Williams, Magana, Lemke, and Hardy reached an agreement with Defendants Carter, Obaisi, and Wexford Health Sources, Inc. (the Wexford Defendants) to deny Plaintiff his constitutional rights to medical care and access to medical care. Plaintiff has additionally brought a § 1983 claim against Defendant Baldwin in his official capacity as Director of the IDOC for injunctive relief to stop the ongoing denial of medical care. Finally, Plaintiff has brought a claim for indemnification of any judgment he obtains against the IDOC Defendants.

The IDOC Defendants do not assert any arguments in favor of dismissal of Plaintiff's claim against Defendant Baldwin, but they have moved to dismiss the remainder of Plaintiff's claims against them. For the reasons set forth below, there is no basis to dismiss any of these claims at the pleading stage, and the Court should deny the IDOC Defendants' motion to dismiss.

## FACTS

In his Second Amended Complaint, Plaintiff has alleged that for more than 5 years, he has been denied medical care and access to medical care for his structurally damaged and unstable right knee, which causes him severe pain. Doc. No. 81 ¶¶ 1–4, 22–47. During those 5 years, Plaintiff has submitted more than 38 medical request slips—using an IDOC form prisoners are instructed to complete to request medical attention—complaining about the pain and instability that he has been suffering in his right knee. *Id.* ¶¶ 2, 23–24, 37–39, 41–42. He has also made several oral requests for medical attention to nurses, correctional medical technicians, and correctional officers he has encountered. *Id.* ¶¶ 2, 23, 28, 38, 42, 44. Virtually of Plaintiff's requests for medical attention have been ignored.

From approximately June 2010 to December 23, 2010, Plaintiff received no medical attention. *Id.* ¶¶ 23–25. In February 2011, Dr. Ghosh referred Plaintiff to physical therapy for

treatment, but Plaintiff did not see a physical therapist (or any other medical staff) until more than a year later, on February 14, 2012. *Id.* ¶¶ 25–29.

During his first physical therapy session in February 2012, the physical therapist immediately noticed the extreme laxity and instability of Plaintiff's right knee and suspected Plaintiff had suffered a complete ligament tear. *Id.* ¶ 29. The physical therapist referred Plaintiff to Defendant Carter for an MRI (a magnetic resonance imaging test), but Plaintiff was forced to wait an additional 3 months to receive it. *Id.* ¶¶ 29–33.

The MRI was taken in May 2012 and confirmed the severe structural damage in Plaintiff's knee, including a completely torn ACL (anterior cruciate ligament) as well as other ligament and meniscal tears and sprains. *Id.* ¶ 33. During a follow-up appointment with orthopedic specialists at the University of Illinois at Chicago Hospital (UIC) one week later, Plaintiff was told that he needed reconstructive surgery to repair the ACL and other structural damage in his right knee. *Id.* ¶ 34. But the orthopedic specialists also told him that they could not schedule him for surgery unless and until IDOC and Wexford staff approved their "recommendation" for surgery. *Id.*

Following his consultation, Plaintiff received no medical attention until May 28, 2013, almost a full year later. *Id.* ¶¶ 34–37. On May 28, 2013, after his numerous requests for medical attention had been ignored for nearly 12 months, Plaintiff saw Defendant Obaisi, who told Plaintiff that he would recommend that Plaintiff be returned to UIC for follow-up treatment. *Id.* ¶¶ 37–40. Despite Defendant Obaisi's assurances, Plaintiff was not taken back to the hospital.

Plaintiff instead spent another 12 months without any medical attention whatsoever. On May 28, 2014, after his countless written and oral requests for medical care were once again ignored, Plaintiff saw two nurses, who were disgusted with the amount of damage in Plaintiff's

3

knee and referred Plaintiff to Defendant Obaisi for treatment. *Id.* ¶¶ 41–44. Plaintiff saw Defendant Obaisi on June 2, 2014. *Id.* ¶ 45. When Plaintiff asked about the follow-up appointment at UIC, Defendant Obaisi told him that the healthcare unit had lost his 2012 MRI results and that he could not be sent back to UIC until the results were located. *Id*.

Plaintiff again received no further medical attention for 8 more months. *Id.* ¶¶ 45–46. On February 25, 2015, Plaintiff was finally taken back to UIC for the follow-up consultation ordered nearly 3 years earlier. *Id.* ¶ 46. Because it had been almost 3 years since his last MRI, however, the orthopedic surgeon he saw told him that the doctors would need another MRI to assess the current level of damage before performing surgery to repair his knee. *Id.* But once again, Defendants forced Plaintiff to wait 7 more months before he was returned to the hospital for an updated MRI. *Id.* ¶ 46. To this day, Plaintiff has not received any treatment for his severely damaged knee. *Id.* ¶ 47.

Plaintiff's denial of medical care and access to medical care over the course of 5 years is not an anomaly at Stateville. Rather, his injuries are the result of policies and widespread practices at the prison pursuant to which prisoners like Plaintiff with serious medical needs are routinely denied medical care and access to medical care. *See id.* ¶¶ 64–70. These policies and practices include the following: (a) failures by medical and nonmedical staff to respond to prisoners who request medical attention or ask to see a doctor; (b) failures by medical and nonmedical staff to provide prisoners timely medical care and access to medical care; (c) a deficient system for prisoners to request medical attention; (d) inadequate numbers of medical staff to provide medical attention and review prisoners' requests for medical attention; and (e) assignment of responsibilities regarding access to medical care to correctional medical technicians who are not qualified to perform these tasks. *Id.* ¶ 66.

Defendants Williams, Magana, Lemke, and Hardy were responsible for overseeing prisoners' access to adequate medical care at Stateville, and for creating and instituting policies pertaining to that access. *Id.* ¶ 64. They knew about these policies and widespread practices, and knew the risk of harm these practices posed to prisoners like Plaintiff with serious medical needs. *Id.* ¶¶ 64–65. Rather than act to correct the problematic policies and practices, however, Defendants Williams, Magana, Lemke, and Hardy encouraged them, allowing them to flourish at Stateville, and Plaintiff suffered as a result. *Id.* ¶¶ 67–68.

## ARGUMENT

In assessing a motion to dismiss, the Court must "construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). To survive dismissal, a plaintiff need only "plead some facts that suggest a right to relief that is beyond the speculative level." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (internal quotation marks omitted); *see also Skinner v. Switzer*, 562 U.S. 521, 131 S. Ct. 1289, 1296 (2011) (Rule 8(a) of the Federal Rules of Civil Procedure "generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument."). When determining whether Plaintiff has stated a claim to relief, the Court must consider his Second Amended Complaint in its entirety. *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013); *Atkins*, 631 F.3d at 832.

**I.     Plaintiff Has Stated a Claim Against the IDOC Defendants for Deliberate Indifference and Failure to Intervene.**

Plaintiff has alleged that Defendants Williams, Magana, Lemke, and Hardy were responsible for ensuring that prisoners at Stateville received constitutionally adequate medical care and access to medical care; were aware of widespread practices by IDOC and Wexford staff

5

at the prison pursuant to which prisoners like Plaintiff with serious medical needs were routinely denied medical care and access to medical care; and condoned those practices, thereby acting with deliberate indifference and causing Plaintiff's injuries. Doc. No. 81 ¶¶ 64–70; *see also Backes v. Vill. of Peoria Heights*, 662 F.3d 866, 870 (7th Cir. 2011) ("[S]upervisor[s] may . . . be personally liable for the acts of [their] subordinates if [they] . . . know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see."). Plaintiff has also alleged that Defendants failed to intervene to prevent the ongoing denial of medical care to Plaintiff despite having a reasonable opportunity to do so. Doc. No. 81 ¶¶ 83–88; *see also Fillmore v. Page*, 358 F.3d 496, 505–06 (7th Cir. 2004).

The IDOC Defendants' argument that Plaintiff has not sufficiently pled their personal involvement fails. The Seventh Circuit has repeatedly held that § 1983 individual-capacity claims are cognizable against supervisors who, although they did not "participate[] directly in the deprivation" at issue, nevertheless acted with "deliberate, reckless indifference to the misconduct of subordinates." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (internal quotation marks omitted); *see also Backes*, 662 F.3d at 869–70 (supervisors may be personally liable under § 1983 if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see"); *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001) (same); *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997) (same); *Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988) (same); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (same; rejecting prison superintendent's argument against personal liability).

In other words, the "personal involvement" requirement of § 1983 does not require Plaintiff to allege that each Defendant was physically present when the constitutional deprivation

6

occurred. *Childress v. Walker*, 787 F.3d 433, 439–40 (7th Cir. 2015) ("personal responsibility is not limited to those who participate in the offending act"). Instead, it requires Plaintiff to allege that Defendants knew about the misconduct that ultimately caused the constitutional deprivation and acted with deliberate indifference to that conduct. *Jones*, 856 F.2d at 992–93 (supervisors must "act knowingly or with deliberate, reckless indifference").

In *Childress*, the Seventh Circuit rejected the same argument advanced by the IDOC Defendants in this case. 787 F.3d at 439–40. It held that for prison administrators "responsible for setting policy, liability will result from the institution of a policy that, when enforced, causes a constitutional deprivation." *Id.* at 440 (internal quotation marks omitted) (citing *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1012 (7th Cir. 2000)). Because the plaintiff in *Childress* had alleged that the defendant-warden knew of the practice that caused his injury, and was aware of the risk of harm that the practice posed to prisoners like him, the Seventh Circuit found that the plaintiff had given the defendant-warden fair notice of his claims against the defendant and thus they should not have been dismissed. *Id.* at 440–41.

Plaintiff's allegations against Defendants Williams, Magana, Lemke, and Hardy are similar to those approved of by the Seventh Circuit in *Childress*. Plaintiff has alleged that Defendants Williams, Magana, Lemke, and Hardy, as Wardens of Stateville, were responsible for overseeing the provision of adequate medical care and access to medical care to prisoners at Stateville, and that they knew of and encouraged common practices by medical and correctional staff pursuant to which prisoners like Plaintiff were being denied adequate medical care and access to medical care. *Compare* Doc. No. 81 ¶¶ 64–70, *with Childress*, 787 F.3d at 440; *see also Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1184–86 (7th Cir. 1985) (upholding verdict

7

against prison administrators for deliberate indifference based on their knowledge of deficiencies in the medical care system).

Plaintiff anticipates that the evidence uncovered during discovery will substantiate these claims. For example, Plaintiff expects that the evidence will show a widespread practice by correctional medical technicians—IDOC employees assigned to review prisoners' medical requests slips and determine whether and when they get treatment—to fail to respond to medical request slips or to provide those prisoners access to medical attention.[1] *See* Doc. No. 81 ¶ 66. Plaintiff further expects that the evidence will reveal that Defendants Williams, Magana, Lemke, and Hardy knew about this widespread practice and the harmful effects it was having on prisoners like Plaintiff with serious medical needs, and yet failed to take appropriate action to address it. *See id.* ¶¶ 67–68. This widespread practice, and Defendants' encouragement of that practice after learning about it, caused Plaintiff's injuries when his own medical requests slips were ignored and he was denied medical care and access to medical care. *Id.* ¶¶ 2, 23–24, 37–39, 41–42.

As the above example demonstrates, it is Defendants' *own* misconduct and failure to take action despite notice of a widespread denial of medical care and access to medical care that form the basis of Plaintiff's claims against Defendants Williams, Magana, Lemke, and Hardy. *Childress*, 787 F.3d at 440; *Bass*, 769 F.2d at 1184–86. Accordingly, he has sufficiently pled a § 1983 claim against them for deliberate indifference and failure to intervene.

*Rascon v. Hardiman*, 803 F.2d 269 (7th Cir. 1986), and the other cases cited by the IDOC Defendants do not support dismissal of Plaintiff's claims. In *Rascon*, the Seventh Circuit found

---

[1] To the extent that Plaintiff's response brief contains factual allegations that are more specific than those in his Second Amended Complaint, he is permitted to do so as long as those statements are consistent with his Second Amended Complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (a party opposing dismissal has more flexibility than a party moving to dismiss, including the ability to "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings").

that the executive director of the Cook County Jail could be held personally liable under § 1983 for failing to implement disciplinary procedures in a section of the jail despite being responsible for overseeing operations in that section and knowing that there were no disciplinary procedures in place there (leading to an *ad hoc* system of punishment and causing a detainee's death). *Id.* at 273–75. Although the Seventh Circuit ordered a new trial, it did so based on the plaintiff's failure to articular her legal theory early enough in the case, which had nothing to do with the viability of her claim against the defendant prison administrator. *Id.* at 275.

The other cases cited by Defendants similarly recognize that liability may attach to prison administrators who maintain policies and practices that violate prisoners' constitutional rights and cause them injury. *Gentry*, 65 F.3d at 561; *Duncan v. Duckworth*, 644 F.2d 653, 655–56 (7th Cir. 1981); *Volk v. Coler*, 638 F. Supp. 1540, 1547 (C.D. Ill. 1986). These cases further bolster the sufficiency of Plaintiff's Second Amended Complaint at the pleadings stage.

In sum, Plaintiff has alleged that Defendants Williams, Magana, Lemke, and Hardy—all of whom were responsible for ensuring prisoners at Stateville received adequate medical care and access to medical care—knew of widespread practices by IDOC and Wexford staff at Stateville pursuant to which prisoners like Plaintiff with serious medical needs were routinely denied medical care and access to medical care. Defendants Williams, Magana, Lemke, and Hardy failed to take any actions in response and instead condoned those practices, thereby acting with deliberate indifference and causing Plaintiff's injuries. Accordingly, the Court should deny the IDOC Defendants' motion to dismiss Count I (denial of medical care) and Count III (failure to intervene) of Plaintiff's Second Amended Complaint.

## II. Plaintiff Has Plausibly Alleged that Defendants Conspired to Deny Him Medical Care and to Fail to Intervene.

The IDOC Defendants next contend that Plaintiff's conspiracy claim against them should be dismissed. Doc. No. 87 at 5–6. The Court previously denied the Wexford Defendants' motion to dismiss Plaintiff's conspiracy claim. *See* Dkt. No. 47. The IDOC Defendants make the same arguments that the Wexford Defendants previously made in favor of dismissing the claim, and the Court should deny the IDOC Defendants' motion to dismiss Plaintiff's conspiracy claim for all of the reasons that it denied the Wexford Defendants' motion.

Liability for conspiracy attaches to a defendant who is a voluntary participant in a common venture. *Jones*, 856 F.2d at 992. The participant "need not have agreed on the details of the conspiratorial scheme or even know who the other conspirators are"; instead, the participant need only "understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to . . . further them." *Id*.

To properly plead a conspiracy claim, "it is enough . . . to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Other than providing this information, there is no heightened pleading standard for conspiracy claims. *E.g., Loubser v. Thacker*, 440 F.3d 439, 442–43 (7th Cir. 2006); *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Walker v. Benjamin*, 293 F.3d 1030, 1039 (7th Cir. 2002); see also *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002). When a complaint alleges a "pattern of misconduct," a plaintiff's conspiracy claim need only allege "conclusory direct allegations of conspiracy" to survive dismissal at the pleadings stage. *Geinosky*, 675 F.3d at 749; *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 790 (N.D. Ill. 2013) (noting that the Court would accept all allegations which "allow[ed it] to draw the reasonable inference" of a conspiracy even where one allegation

10

was, on its own, conclusory); *see also Breiner v. City of Chicago*, No. 13 C 1696, 2014 WL 866419, at *4 (N.D. Ill. Mar. 4, 2014) (denying motion to dismiss plaintiff's conspiracy claim based on totality of plaintiff's allegations); *James v. Vill. of Willowbrook*, No. 11 C 9126, 2012 WL 3017889, at *9 (N.D. Ill. July 19, 2012) (same).

Plaintiff's conspiracy claim satisfies the standards set forth in *Walker* and *Geinosky*, and puts the IDOC Defendants on notice of his allegations. *Geinosky*, 675 F.3d at 749; *Walker*, 288 F.3d at 1007. Plaintiff has alleged that all Defendants participated in the conspiracy during the time they worked at Stateville, and that the conspiracy began in approximately June 2010 and has continued to the present day. *See* Doc. No. 81 ¶¶ 60–73. Finally, he has set forth in his Second Amended Complaint the aim of the conspiracy: (a) to deprive Plaintiff of access to adequate medical care (Count I), and (b) to fail to intervene to prevent others from continuing to deny him adequate medical care (Count III). *Id.* ¶¶ 44–66, 74–79.

Moreover, Plaintiff's Second Amended Complaint alleges in detail a pattern of misconduct by both the IDOC Defendants and the Wexford Defendants over a period of months and years. *Id.* ¶¶ 22–70. For example, Plaintiff has alleged that between 2010 and the present, Defendants Williams, Magana, Lemke, and Hardy were aware that medical staff were commonly failing to respond to prisoners like Plaintiff who requested medical attention, and were aware of the risk of harm that those failures posed to Plaintiff and prisoners like him. *Id.* ¶¶ 65–66. Plaintiff has further alleged that Wexford created, maintained, and encouraged the practice of failing to respond to prisoners' requests for medical attention. *Id.* ¶¶ 56–57. Finally, Plaintiff has alleged that Defendants Carter and Obaisi each failed to respond to his requests for medical attention. *Id.* ¶¶ 23–24, 27–28, 35, 37–39, 41–42, 45–47.

It is plausible to infer from these allegations that the IDOC Defendants and the Wexford Defendants came to an agreement to deprive Plaintiff, and prisoners like him, of access to constitutionally adequate medical care. Indeed, it is implausible to suggest that the IDOC Defendants and the Wexford Defendants each violated Plaintiff's right to adequate medical care without any such agreement. It is especially implausible to reach that conclusion when considering that the IDOC Defendants are responsible for monitoring Stateville prisoners' access to constitutionally adequate medical care, *id.* ¶ 64, and that the Wexford Defendants provided medical care to prisoners at Stateville pursuant to a renewable contract, *id.* ¶ 8. In view of these and Plaintiff's other allegations, Plaintiff's Second Amended Complaint has more than established a plausible account by which Defendants Williams, Magana, Lemke, and Hardy reached an agreement with the Wexford Defendants to violate Plaintiff's constitutional rights from 2010 through the present. That is all that Rule 8 requires of him to allege a claim of conspiracy.

Plaintiff's Second Amended Complaint lays out a plausible account of how Defendants reached an agreement—a conspiracy—to violate Plaintiff's constitutional rights. Accordingly, Defendants' motion to dismiss Plaintiff's conspiracy claim should be denied. In the event that the Court disagrees, Plaintiff seeks leave to re-plead his conspiracy claim pursuant to Rule 15(a).

### III. This Court Has Subject-Matter Jurisdiction of Plaintiff's Indemnification Claim.

The IDOC Defendants argue that this Court has no jurisdiction over Plaintiff's indemnification claim because the Illinois Court of Claims Act, 705 ILCS 505/8, confers exclusive jurisdiction of that claim to the Illinois Court of Claims. Yet this Court's jurisdiction over Plaintiff's indemnification claim is based on federal law—28 U.S.C. § 1367—and Illinois

law cannot limit that jurisdiction. *Rodriguez v. Cook County*, 664 F.3d 627, 631–32 (7th Cir. 2011).

The Seventh Circuit in *Rodriguez* addressed the exact argument advanced by the IDOC Defendants in this case: that Illinois law deprives federal courts of jurisdiction over state-law claims against certain state officials. 664 F.3d at 631. The Court unequivocally rejected this argument, stating that even "if Illinois had purported to insist that all civil litigation against [certain state officials] occur in state courts, that could not curtail federal jurisdiction. Congress, not the states, determines the jurisdictional authority of the federal courts." *Id*. at 632. In other words, "states cannot insist that any particular category of litigation be conducted only in state court." *Id*.

The Seventh Circuit reaffirmed its holding in *Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 2012), finding that "a state employee's sovereign-immunity defense does not impact a federal court's jurisdiction over a case." 672 F.3d at 518. Courts in this Circuit have noted the tension between *Rodriguez* and *Fields*, and earlier Seventh Circuit opinions cited by the IDOC Defendants in their brief, Doc. No. 87 at 7–8, and have concluded that "*Rodriguez* and *Fields* appear to reflect the [Seventh Circuit's] current interpretation of state-law sovereign immunity." *Woods v. Cook Cnty., Ill.*, No. 13 C 2607, 2014 WL 340422, at *4 (N.D. Ill. Jan. 30, 2014); *see also Pisoni v. Illinois*, No. 12 C 678, 2013 WL 2458522, at *5 (S.D. Ill. June 6, 2013) (declining to dismiss plaintiff's state-law claim "in light of *Fields* and *Rodriguez*"); *Stevens v. Dewitt Cnty., Ill.*, No. 11 C 3162, 2012 WL 1066890, at *7 (C.D. Ill. Mar. 28, 2012) (same). Accordingly, the Seventh Circuit's holdings in *Rodriguez* and *Fields* doom Defendants' argument that the Illinois Court of Claims Act deprives this Court of jurisdiction of Plaintiff's indemnification claim.

Because § 1367(a) confers jurisdiction over Plaintiff's indemnification claim to this Court, the IDOC Defendants' motion to dismiss the claim based on lack of jurisdiction should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the IDOC Defendants' Motion to Dismiss in its entirety.

                                            Respectfully submitted,

                                            /s/ Sarah Grady
                                            Sarah Grady
                                            Attorney for Plaintiff

Arthur Loevy
Michael Kanovitz
Sarah Grady
LOEVY & LOEVY
312 North May St., Suite 100
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

      I, Sarah Grady, an attorney, certify that on November 23, 2015, I caused the foregoing Plaintiff's Response to the IDOC Defendants' Motion to Dismiss to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

                                      /s/ Sarah Grady
                                      Sarah Grady
                                      Attorney for Plaintiff